UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BFI WASTE SYSTEMS OF NORTH AMERICA, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | Case No. 4:09CV1379 HEA |
| SHAW ENVIRONMENTAL & INFRASTRUCTURE, INC., et al., | ) ) ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Shaw Liquid Solutions, LLC's Motion to Dismiss, [Doc. No. 21]. Plaintiff opposes the Motion, and the parties have submitted numerous briefs. For the reasons set forth below, the Motion is granted in part and denied in part.

### Facts and Background[1]

Plaintiff brought this action pursuant to Sections 107 and 113[2] of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCA), 42 U.S.C. §§ 9607 and 9613, as amended, the Declaratory Judgment

---

[1] The recitation of facts is taken from Plaintiff's Complaint and is set forth for the purposes of this motion only. It in no way relieves the parties of the necessary proof thereof in these proceedings.

[2] Plaintiff has voluntarily dismissed its Section 113 claim without prejudice.

Act, 28 U.S.C. § 2201, and Missouri law for the recovery of costs and other damages Plaintiff has allegedly incurred or will incur in connection with its landfill, the Missouri Pass Landfill, (the Site), located in Maryland Heights, Missouri.

The Complaint alleges the following facts:

The Site is a sanitary landfill located on a 99 acre parcel in Maryland Heights, Missouri. Approximately 72 acres of the Site were permitted for waste disposal. Plaintiff owns the Site. It received a permit from the Missouri Department of Natural Resources to operate the Site as a sanitary landfill. The Site stopped accepting waste in January, 1995 and received official closure approval from the State of Missouri in May, 1996. The Site is subject to a mandatory 30-year post-closure care period which began in May, 1996 and ends in May, 2026.

The Site has an active gas collection system that consists of landfill gas extraction wells, header and lateral tubing and piping, condensate knockout tanks, a blower system, active and passive flares, sumps and pumps, meters and metering equipment, and other related devices. The purpose of the gas collection system is, among other things, to prevent the migration of landfill gas.

On October 22, 2001, Plaintiff, Defendant MoPass and Defendant Biomass entered into a Landfill Gas Asset Purchase Agreement, (the Purchase Agreement).

Under the terms of the Purchase Agreement, MoPass agreed to purchase the Site's gas collection system and the rights to collect, use and sell landfill gas generated by the Site. As consideration for the assets that it acquired from Plaintiff, MoPass agreed that for the 20 year term of the Purchase Agreement, it would perform the required post-closure care for the Site including, but not limited to, monthly gas probe testing, final cover maintenance and the operation and maintenance of the Site's gas collection system. MoPass further agreed to pay $25,000 per year for easement and lease rights and to be responsible for any taxes levied against the gas collection system and other assets that it acquired from Plaintiff.

Paragraph 2.3 of the Purchase Agreement provides that MoPass is responsible of the active and passive abatement of any migration of landfill gas from the Landfill collection area. The Purchase Agreement requires MoPass to maintain the gas collections system in good operating condition and repair and to replace any components of the gas collection system that become inoperable or obsolete while it is responsible for operating the system.

Plaintiff and MoPass entered into a Site Lease Agreement, (the Site Lease), the same day as they executed the Purchase Agreement. In the Site Lease, Plaintiff gave MoPass the right to use a portion of the Site to generate electricity, produce high or medium Btu gas or collect, destroy, recycle, inject or treat condensate or

other liquids collected at the Site. In exchange for the use of a portion of the Site, MoPass agreed to pay Plaintiff $25,000 per year in annual rent and to pay all property taxes levied on the Site. The Site Lease has a 20 year term. Plaintiff may terminate the Site Lease if the Purchase Agreement is terminated prematurely.

The Purchase Agreement requires MoPass to indemnify, defend and hold harmless Plaintiff against any losses, cost, expenses, claims, liabilities, actions, causes of actions, fines, penalties, remediation, or damages arising from MoPass' maintenance or operation of the gas collection system, activities at the Site, collection, use, sale, or flaring of landfill gas, or failure to comply with the terms of the Purchase Agreement or Site Lease. Under the Purchase Agreement, MoPass must also defend, indemnify and hold harmless Plaintiff against any claims, losses, liability, damages, penalties, fines, costs and expenses due to the release, discharge or deposit of Hazardous Material by MoPass or its agents, contractors or employees at the Site and must take all measures necessary to remedy such releases, discharges and deposits. This environmental indemnity provision expressly provides for indemnification for and against any and all emissions and migrations of landfill gas.

The Purchase Agreement provides that Defendant Biomass will act as a guarantor for MoPass and will guarantee timely payment and performance by

MoPass of its obligations under the Purchase Agreement, the Site Lease and all related agreements, including its obligation to indemnify Plaintiff. Biomass is obligated to take all actions necessary to ensure that MoPass does not default on the Purchase Agreement, the Site Lease or any related agreements, and is immediately liable if MoPass fails to perform as required under the agreements.

Defendant Liquid Solutions[3] constructed a facility to treat industrial wastewater and other liquids (the E-VAP facility) on the leased portion of the Site and began storing liquids at the Site without Plaintiff's approval.

On July 27, 2005, Plaintiff, MoPass, Biomass, and Liquid Solutions entered into a letter agreement in which Plaintiff granted a license to Liquid Solutions to operate and maintain the E-VAP facility at the Site (the License Agreement). The parties to the License Agreement also entered into a Joinder Agreement in which they agreed that Liquid Solutions would join MoPass as a lessee under the existing Site Agreement. Under the Terms of the License Agreement, Liquid Solutions agreed to be bound by the terms of the Purchase Agreement, as if it were a party thereto, until an amended Purchase Agreement and Site Lease could be negotiated.

---

[3] On March 1, 2010, a Suggestion of Bankruptcy and Notice of Stay was filed on behalf of Defendant Liquid Solutions, LLC. As such, the provisions of 11 U.S.C. § 362(a) apply and all claims, causes of action and proceedings commenced against Liquid Solutions, LLC are stayed. Therefore, the rulings herein shall have no effect at this time to the claims against Defendant Liquid Solutions, LLC.

An Amended Purchase Agreement and Site Lease were never executed, but Liquid solutions nevertheless proceeded to operate the E-VAP facility on the leased portion of the Site. The License Agreement requires Liquid Solutions to indemnify, defend and hold harmless Plaintiff against any losses, costs, expenses, claims, liabilities, actions, causes of action, fines, penalties, remediation, or damages arising out of Liquid Solutions' construction and maintenance of the E-VAP facility, activities at the Site or failure to comply with the terms of the License Agreement or Site Lease. The License Agreement expired on November 8, 2006.

The Complaint further alleges that Liquid Solutions has no employees other than its president. It relied on Shaw Environmental & Infrastructure, Inc. (Shaw) to conduct post-closure care and other operations at the Site. Shaw employees performed all Site activities for Liquid Solutions and MoPass since August, 2005. Shaw employees operated and maintained the E-VAP facility. Shaw employees used Shaw equipment and vehicles. Their work included conducting monthly gas probe monitoring and operating and controlling the Site's gas collection system. Shaw managed, directed and conducted operations relating to the leakage or disposal of hazardous substances at and from the Site, and made decisions concerning compliance with environmental regulations.

During the time Shaw was operating the Site's gas collection system, evidence of gas migration was detected.

Defendants have informed Plaintiff that they do not intend to address actual or threatened gas migration from the Site. Plaintiff has retained a contractor to complete an investigation and to develop a work plan to contain and eliminate any gas migration.

The Complaint further alleges that through its Shaw LS subsidiary, Shaw helped to establish Liquid Solutions as a limited liability company. Officers from Shaw made decisions concerning the operation of Liquid Solutions and attended meetings on its behalf. Shaw failed to provide Liquid Solutions with sufficient capital to operate. Shaw and/or its affiliates made loans to Liquid solutions at high rates of interest. Liquid Solutions became insolvent. Shaw continued to operate the Site through Liquid Solutions to avoid liability for post-closure care, gas migration and other obligations that Liquid Solutions had assumed on its behalf.

GEI Liquid Solutions, LLC, (GEI), jointly owns Liquid Solutions with Shaw LS. GEI brought suit against Shaw LS in this Court on August 6, 2008 alleging that Shaw LS had breached the terms of their Limited Liability Company Agreement by asserting control over Liquid Solutions and operating it to enrich Shaw LS and its affiliates.

Count I of the Complaint is brought against Shaw, Shaw LS, Liquid Solutions and MoPass for costs incurred and future costs incurred while undertaking response actions under Section 107(a) of CERCA. This count alleges that Shaw, Shaw LS, Liquid Solutions, and MoPass each were an operator of the Site at the time of disposal of "hazardous substances." Further, during the time that these defendants operated the Site, there was a release or threatened release at the facility of hazardous substances. Plaintiff seeks recovery of the response costs.

Count II is brought against Shaw, Shaw LS, Liquid Solutions, and MoPass under a theory of negligence. This Count alleges that these defendants had a duty to maintain and repair the gas collection system and to operate the Site, the gas collection system and the E-VAP facility so as not to permit hazardous substances to enter the environment. Further, they had a duty to promptly respond to known releases of contaminants in a manner that would prevent migration and comply with the applicable federal, state and local statutes and regulations.

The Complaint alleges that Shaw, Shaw LS, Liquid Solutions and MoPass breached these duties by their negligent acts and omissions in operating, maintaining and controlling the Site, the gas collection system and the E-VAP facility, and by their failure to prevent and effectively investigate and address the release of contaminants at the Site.

Counts III and IV are brought against Shaw, Liquid Solutions and MoPass for breach of the Purchase Agreement and Site Lease, respectively.[4]

Count V is a claim for Indemnification against Shaw, Liquid Solutions and MoPass.[5]

Count VI is a breach of guaranty claim against Biomass.

## **Discussion**

When ruling on a motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The Court does not, however, accept as true any allegation that is a legal conclusion. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). The complaint must have "'a short and plain statement of the claim showing that the [plaintiff] is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting Fed.R.Civ.P. 8(a)(2)) and then *Conley v. Gibson*, 355 U.S. 41, 47 (1957),

---

[4] Shaw (and Liquid Solutions, see footnote 3 regarding Liquid Solutions) has filed a Motion to Dismiss the breach of contract claims in addition to the CERCA and negligence claims. The issues raised with respect to the breach of contract claims will be addressed in a separate Opinion.

[5] Shaw (and Liquid Solutions, see footnote 3 regarding Liquid Solutions) has filed a Motion to Dismiss the indemnification claim in addition to the CERCA and negligence claims. The issues raised with respect to the indemnification claim will be addressed in a separate Opinion.

abrogated by *Twombly*, supra); see also *Gregory v. Dillard's Inc.*, 565 F.3d 464, 473 (8th Cir.) (en banc), cert. denied, 130 S.Ct. 628 (2009). While detailed factual allegations are not necessary, a complaint that contains "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" is not sufficient. *Twombly*, 550 U.S. at 555; accord *Iqbal*, 129 S.Ct. at 1949. The complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 129 S.Ct. at 1949; *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629-30 (8th Cir.2010); *Zutz v. Nelson,* 601 F.3d 842, 848 (8th Cir. 2010); *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. If the claims are only conceivable, not plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; accord *Iqbal*, 129 S.Ct. at 1950. In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594. The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. See *Neitzke v. Williams*, 490

U.S. 319, 327 (1989).

Shaw LS urges dismissal of Count I because it contends that landfill gas is not a hazardous substance, and therefore, Plaintiff has failed to state a cause of action under CERCA. In arguing this position, Shaw LS attempts to circumvent the applicable Rule 12(b)(6) standard that requires the Court to assume the truth of the allegations in the Complaint. Plaintiff alleges that Shaw LS managed, directed or conducted operations relating to the leakage or disposal of hazardous substances at and from the Site or made decisions concerning compliance with environmental regulations; that it was an operator of the Site at the time of disposal of hazardous substances; that there was a release or threatened release at the facility of hazardous substances as classified by the United States Environmental Protection Agency pursuant to Section 102(a) of CERCA and other statutes and regulations.

Whether landfill gas falls within the definition of hazardous substances, as that term is defined in the applicable law, is not a matter to be resolved on a motion to dismiss. As Plaintiff points out, the components of landfill gas may be sufficient to withstand challenge, but this determination is not yet ripe. Rule 12(b)(6) tests the sufficiency of the Complaint; the rule is not intended resolve ultimate issues. While later proceedings may require Plaintiff to establish that landfill gas is indeed a hazardous substance, Shaw LS has provided no persuasive

authority which requires Plaintiff to detail the basis for alleging landfill gas is a hazardous substance, *i.e.*, setting out the specific components of landfill gas which are encompassed within the definition of hazardous substances. See *Johnson v. James Langley Operating Co.*, 226 F.3d 957, 962 (8th Cir. 2000).[6]

Likewise, Shaw LS's argument that landfill gas falls within CERCA's exclusion requires an analysis that is not currently before the Court. Whether landfill gas falls within the exclusion is more appropriately addressed in a motion for summary judgment or judgment on the pleadings wherein the parties may submit matters outside the pleadings in support of their respective positions. At this stage in the litigation, Plaintiff's Complaint, when taking the factual allegations as true, is sufficient to state a cause of action for CERCA cost recovery.

With respect to Plaintiff's negligence claim, the Complaint fails to state a claim. Under Missouri law, an action for negligence requires Plaintiff to establish that Defendant had a duty to protect Plaintiff from injury, Defendant breached that duty, and Plaintiff's injury was proximately caused by Defendant's breach. *Jarrett v. Jones,* 258 S.W.3d 442, 448 (Mo.,2008); *Krause v. U.S. Truck Co., Inc.*, 787

---

[6] Defendant's reliance on *Gallagher v. T.V. Spano Bldg. Corp.*, 805 F.Supp. 1120, 1128 (D.Del. 1992) is misplaced at this stage of the proceedings. In *Gallagher*, the issue was before the Court on summary judgment. Summary judgment was granted to the defendant because the plaintiffs failed to present evidence that the defendant disposed of hazardous substances at the site in question.

S.W.2d 708, 710 (Mo. banc 1990). While Plaintiff alleges the formal elements of a claim for negligence, Plaintiff fails to articulate any facts which would support these elements beyond the speculative level. Plaintiff does not allege Shaw LS had any direct involvement with the landfill. Plaintiff, in a completely conclusory fashion, alleges that Shaw LS was an operator, that it owed a duty to Plaintiff and that its breach of the duty caused damages to Plaintiff. These allegations fail to set out how Shaw LS became an operator of the Site's gas collection system, fail to set out how a duty to Plaintiff arose, and what its negligent acts and omissions allegedly were. Merely stating conclusions fails to overcome a Rule 12(b)(6) challenge.

## Conclusion

Plaintiff's CERCA claim in Count I is sufficient to apprise Defendant Shaw LS of the claim against it. Plaintiff's negligence claim, however, fails to meet the pleading standards of *Twombly* and *Iqbal*, and therefore, must be dismissed

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, [Doc. No. 21], is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Count II is dismissed as to Defendant Shaw Liquid Solutions, LLC. Plaintiff may file a motion to amend within 14 days

from the date of this Opinion, Memorandum and Order for the Court's consideration.

Dated this 23rd day of July, 2010.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE